THE STATE OF NORTH DAKOTA EX REL. F. W. BOWMAN, the Clerk of Riggin School District No. 4, a Public Corporation of Benson County, North Dakota, and a Resident Property Owner and Taxpayer of Said School District; Magnus Hofstrand, One of the Directors of Said School District; and Ira Bingaman, One of the Directors of Said School District, Respondents, v. EVEN LAMAN, Gust Tweten, David Hunter, George Forner, and R. S. Montague, as the Board of County Commissioners of Benson County, a Public Corporation; G. A. Gilbertson, as County Auditor of Said Benson County; and Adeline Engelhorn Ellefson, as County Superintendent of Schools of Said Benson County, Appellants.

(204 N. W. 845.)

Schools and school districts — petition to organize a new school district, from territory lying in two or more counties must be presented for concurrent action to boards of county commissioners and county superintendents of such counties.

Under chapter 197 of the Session Laws of 1919, amending § 1147 of the Compiled Laws of 1913, a petition proposing the organization of a new school district from territory previously embraced within a school district lying with-

in two or more adjoining counties must be presented for concurrent action to the boards of county commissioners and county superintendents of the counties within which such original district was embraced.

Opinion filed December 23, 1924.

Schools and School Districts, 35 Cyc. p. 840 n. 19.

Appeal from the District Court of Benson County, *Buttz*, J.
Affirmed.
*Cuthbert & Adamson*, for appellants.
*Sinness, Duffy & Wheeler*, for respondents.

BIRDZELL, J.   In a special proceeding brought to determine the legality of certain action taken to organize a school district in Benson county the following essential facts appear:  Prior to the institution of the proceedings in question, there was a school district known as Graham's Island school district which lay partly within Benson county and partly within Ramsey county.   In the vicinity of this district in Benson county was another district known as Riggin school district No. 4.   In 1923 a petition was presented to the county commissioners and county superintendent of Benson county, asking for the organization of a new school district to be known as Tilden school district, which when organized would include territory previously embraced within Graham's Island and Riggin school districts.   Notice of the hearing was published in a legal publication on May 25th, June 1st, June 8th and June 15th, 1923 and the hearing was set for and had on July 10th.   Four of the county commissioners voted in favor of the petition, one commissioner not voting and the county superintendent voting against it. These facts present three questions:  (1) Does favorable action upon a petition for the organization of a school district to be legally effective require the concurrence of the county superintendent of schools?   (2) Where the proposed new school district embraces territory wholly within a given county but some of which is taken from a school district which lies within two counties, may such petition be heard by the county commissioners and the county superintendent of the county within which the proposed new district would lie, or must it be heard by the county commissioners and the county superintendents of the

two counties wherein one of the original districts lies? (3) Was there thirty days' published notice of the hearing?

As we view the matter, the case is controlled by the answer to the second question. It must be conceded that the matter of creating and altering school districts is a legislative function. Section 1147 of the Compiled Laws of 1913, as amended by chapter 197 of the Session Laws of 1919, provides:

"The board of county commissioners and county superintendent may organize a new school district from another district or from portions of districts already organized, if in their judgment the organization of a new district is desirable and necessary, upon being petitioned so to do by at least two-thirds of the school voters residing in the proposed district. When two or more adjoining counties are affected, such proposed new district shall be organized by the concurrent action of the boards of county commissioners and County Superintendents of such counties. Action on such organization shall be taken only at the July meeting of the County Commissioners. Provided, that all assets and liabilities shall be equalized according to § 1327 of the Compiled Laws of North Dakota for the year 1913."

Was it necessary under this statute that the petition in the instant case should be presented to a body consisting of the members of the boards of county commissioners and the county superintendents of both Benson and Ramsey counties? The statute says when two or more adjoining counties are "affected," such proposed new district shall be organized by the concurrent action of the boards of county commissioners and the county superintendents of such counties. Is Ramsey county "affected," within the meaning of the statute, by the organization of a new district in Benson county, which district will embrace territory previously included within a district lying partly in Benson county and partly in Ramsey? Under the statute as it existed prior to the 1919 amendment (Comp. Laws 1913, § 1147), there can be no doubt that the action to organize a new district from territory previously embraced within a district lying in two counties was required to be taken by the county commissioners and county superintendents of such counties. As the statute then read, it purported to authorize the board of county commissioners and the county superintendent to organize a new school district from portions of school districts already organized upon

being petitioned so to do by a majority of the school voters "residing in the districts, whose boundaries will be affected by the organization of the new district, and by at least three-fourths of the residents of the territory to be included in the new district," and it further provided that when the districts from portions of which the new district is sought to be organized lay in two or more adjoining counties, the new district should be organized by the concurrent action of the two or more boards of county commissioners and the county superintendents. This statute recognized the interests of the districts from which territory was being taken to be included in the proposed new district both by requiring the petition to be signed by at least a majority of the school voters in the original districts and by expressly requiring action by the joint boards when a district from portions of which a new district is sought to be organized lay in adjoining counties. In the statute in question, however, no recognition is accorded to the districts whose boundaries will be affected by the new district so far as the petition is concerned. In other words, the sufficiency of the petition is determined solely by whether or not it contains the requisite number of signers within the proposed new district. So far as action on the petition is concerned, however, the amended statute does not in express terms say, as did the original act, that the petition should be acted upon by the joint body of the two or more counties when the districts from portions of which the new district so sought to be organized lay in adjoining counties. But the amended statute contains a condensed expression which might or might not mean the same thing, depending on its construction. It says "When two or more adjoining counties are affected," concurrent action is required. While in our opinion there is some doubt whether a county is *affected* by the organization of a new district merely because some territory proposed to be incorporated in the new district is taken from a joint district, we are of the opinion that, in view of the legislative history of the particular statute and specifically its immediate antecedent, it can not be said that the county is not affected. The joint district could not have been created without joint participation in the legislative act creating it. It would seem, then, that a county whose officers were authorized to participate in the creation of a district would be "affected" by a legislative proposal to dismember it. Hence, we hold that a petition to organize a new district out of territory lying within

adjoining counties must be presented to and acted upon by a body composed of the boards of county commissioners and county superintendents of the counties within which one of the original districts to be affected by the division lies. Some further support is given to this construction by a consideration of the consequences of the organization of a new district under the statute in question. The organization of the new district will involve a division or equalization of assets and liabilities between all of the districts affected by the action. This is especially provided for by referring such matter for adjustment under § 1327. That section and the following cognate provisions clearly require representation by every district from which territory is taken, thus recognizing that every such district is affected. If a district is affected for purposes of equalization, it is difficult to see why it and the authority responsible for its creation should not be considered as affected by legislative action anterior to such equalization.

Since we are constrained to adopt this construction of chapter 197 of the Laws of 1919, it follows that the board which acted upon the petition in the instant case was without jurisdiction and the action taken was void. The decision of this question, therefore, renders unnecessary the consideration of the other questions presented.

Judgment affirmed.

BRONSON, Ch. J., and NUESSLE and JOHNSON, JJ., concur.

CHRISTIANSON, J., dissenting.